LAW OFFICES OF THOMAS J. KELLEY & ASSOCIATES
THOMAS J. KELLEY, ESQUIRE            ATTORNEY FOR DEFENDANT
IDENTIFICATION NO. 24777             ZONAR Systems, Inc.
50 GLENMAURA NATIONAL BOULEVARD
SUITE 300 – GLENMAURA PLAZA
MOOSIC, PA 18507
(570) 343-6570

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Shirley Dorshimer and Robert Dorshimer, | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION LAW |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| Zonar Systems, Inc., | : | |
| Defendant | : | (Judge  Mannion) |
| v. | : | |
| | : | Electronically Filed |
| Velociti, Inc., | : | |
| Additional Defendant: | | No. 3:13-cv-00553-MEM |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## BRIEF IN SUPPORT OF DEFENDANT ZONAR SYSTEMS, INC.'S

## MOTION FOR SUMMARY JUDGMENT

## <u>**TABLE OF CONTENTS**</u>

I.     STATEMENT OF THE CASE.................................................................................. 1

       A.     Procedural History ...................................................................................... 1

       B.     Facts ........................................................................................................... 2

       C.     Statement of Questions Presented.............................................................. 9

       D.     Standard of Review..................................................................................... 9

II.    LEGAL ARGUMENT ......................................................................................... 11

       A.     Strict Liability .......................................................................................... 11

       B.     Negligence ................................................................................................ 14

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986) ................................................ 10

*Blake v. Greyhound Lines, Inc.*, 448 F.Supp.2d 635 (2006).................................. 12, 14

*Blewitt v. Man Roland, Inc.*, 168 F. Supp. 2d 466 (Ed. Pa. 2001)................................ 21

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ............................................... 10, 11

*Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997) ................................................ 13

*Fleck v. KDI Sylvan Pools, Inc.*, 981 F.3d 107, 119 (3rd Cir. 1992)........................... 13

*Jones v. Beard*, 145 Fed. Appx. 743 (3rd Cir. 2005) .................................................... 11

*Lynch v. McStome and Lincoln Plaza Associates*, 568 a.2d 1276 (Pa. Super 1988) ................... 14

*Macovick v. Westinghouse Elec. Corp.*, 575 A.2d 100, 102 (Pa. 1990) ....................... 12

*Malloy v. Doty Conveyer*, 820 F.Supp. 217 (Ed. Pa. 1993).......................................... 22

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) .................. 10

*Mracek v. Bryn Mawr Hospital*, 610 F.Supp. 2d. 401 (Ed. Pa. 2009)......................... 15

*Nathan v.Techtronic Industries North America, Inc.*, 2015 WL679150 (M.D. Pa.2015) ............ 11

*Olson v. General Electric Astrospace*, 101 F.3d. 947, 951 (3rd Cir. 1996) ................. 10

*Pavlik v. Lane Limited/Tobacco Experts International*, 135 F.3d 876 (3rd Cir. 1998).......... 11, 12

*Phillips v. A-Best Prods., Co.*, 665 A.2d 1167, 1171 (Pa. 1995).................................. 12

*Reeser v. NGK North American, Inc.*, 14 A.3d 896 (Pa. Super. 2011)......................... 21

*Wenrick v. Schloemann-Siemag Aktiengesell-Schaft*, 564 A.2d 1244, 1247 (Pa.1989) ......... 16, 20


**Other Authorities**

Restatement (Second) of Torts § 324A......................................................................... 19


**Rules**

Federal Rule of Civil Procedure 56 ........................................................................... 9, 10

Federal Rule of Evidence 703...................................................................................... 19

LAW OFFICES OF THOMAS J. KELLEY & ASSOCIATES
THOMAS J. KELLEY, ESQUIRE                    ATTORNEY FOR DEFENDANT
IDENTIFICATION NO. 24777                     ZONAR Systems, Inc.
50 GLENMAURA NATIONAL BOULEVARD
SUITE 300 – GLENMAURA PLAZA
MOOSIC, PA 18507
(570) 343-6570

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Shirley Dorshimer and Robert Dorshimer, | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION LAW |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| Zonar Systems, Inc., | : | |
| Defendant | : | (Judge  Mannion) |
| v. | : | |
| | : | Electronically Filed |
| Velociti, Inc., | : | |
| Additional Defendant: | | No. 3:13-cv-00553-MEM |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## BRIEF IN SUPPORT OF DEFENDANT ZONAR SYSTEMS, INC.'S
## MOTION FOR SUMMARY JUDGMENT

AND NOW, comes the Defendant and Third Party Plaintiff, Zonar Systems, Inc. by and through its attorneys, Thomas J. Kelley & Associates and files this Brief in Support of its Motion for Summary Judgment.

## I.   STATEMENT OF THE CASE

### A.      Procedural History

Plaintiffs, Shirley and Robert Dorshimer instituted this action by Writ in the Court of Common Pleas of Monroe County and thereafter filed a Complaint there against Defendant, Zonar Systems, Inc. (hereinafter "Zonar") on January 28, 2013.  The Complaint against Zonar alleges that Shirley Dorshimer was injured on August 30, 2010 as the result of a defective

1

product manufactured and sold by Zonar.  Plaintiffs assert in their Complaint causes of action in strict liability, negligence and loss of consortium.  Zonar joined Velociti, Inc. (hereinafter, "Velociti") as Additional Defendant on February 21, 2013. Zonar filed its Answer with Affirmative Defenses to Plaintiffs' Complaint on February 26, 2013.  Zonar removed the action to Federal Court on February 27, 2013.  On April 29, 2013 Zonar filed a Third Party Complaint against Velociti alleging that Velociti had negligently installed Zonar's product.   Velociti answered the Third Party Complaint on May 14, 2013.

**B.      Facts**

At the time of her accident, Plaintiff Shirley Dorshimer was employed by First Student, Inc. (hereinafter "First Student") as a school bus driver in the Pleasant Valley School District in Brodheadsville, Pa. (See Exhibit "A")  First Student operates nationally as a provider of student transportation services.  It owned and operated a fleet of school buses at Pleasant Valley pursuant to a contract with the District. (SMF-1)

First Student requires its school bus drivers to preform daily pre- and post-trip inspections of their vehicles. (SMF-3)   In 2007, First Student began the nationwide implementation of a product manufactured by Zonar known as an EVIR HD-GPS to be used by drivers to conduct and record vehicle inspections electronically. (SMF-4)  Zonar itself retained Velociti , a professional installation company, to perform many of the initial installation of its product in First Student vehicles.  However, starting in July 2008, First Student contracted directly with Velociti to install the Zonar equipment in its buses going forward. (SMF 10-11) The Zonar equipment was installed in the Brodheadsville bus fleet by employees of Velociti in November of 2008. (SMF-14)

A driver uses the Zonar system to conduct a vehicle inspection by first retrieving a handheld device, (called officially a 2010 unit) from a cradle (hereinafter "Vehicle Mount") mounted inside the bus. (SMF-6-9)  In Plaintiff's bus, Velociti had installed the Vehicle Mount on the extreme right hand side of the bulkhead over the steps in the bus' entryway. (SMF-15) Plaintiff contends that it was difficult for her to reach the handheld in that location because it placed her in an awkward and unstable position.  She alleges that ultimately on August 30, 2010 she believes that she lost her balance and fell out of the bus entryway while reaching for the handheld. (See Exhibit "A")

Zonar's installation instructions accompanying the product directed that none of the components of the system, particularly the Vehicle Mount, should be installed "in a difficult to access area."(SMF-19-20)   Both the purchaser, First Student and its installation contractor, Velociti were aware of these instructions at the time that the Zonar system was installed in Plaintiff's bus. (SMF-18)   Both have agreed in discovery that the installation instructions adequately convey that the Vehicle Mount should not be installed where it was placed in the Plaintiff's bus. (SMF 21-23;60).

The installation instructions read in pertinent part regarding placement of vehicle mounts in assorted vehicles:

> "1) Follow all General Guidelines as specified on p. 4.
>
> 2) Mount onto interior flat surfaces large enough to accommodate footprint.
>
> 3) Do not install below windows or doors which open to the vehicles exterior to prevent water damage.
>
> 4)  Avoid mounting equipment in difficult to access areas.
>
> 5)  Avoid mounting equipment in dirty, dusty or damp areas (e.g. near floors and entranceways).

3

6)  Mount vertically to ensure good electrical connections between 2010 and VM.   Ensure 2010 Unit can be easily inserted / removed without interference.

7) Mount high in vehicle, avoid driver's legs and arm rest areas. This also minimizes the chance of the Mount being used as a holder for non Zonar equipment. (e.g. glasses, pens, pencils, etc.)"

(See Exhibit "D" at p.8).

The Velociti installer at Broadheadsville, Jacob Judd, has acknowledged that the installation at issue was made in contravention of Zonar's instructions in that it was placed in a difficult to access area and next to an entryway door. (SMF-23)  Nevertheless, he testified that he was constrained to put it there by installation restrictions imposed by First Student at the time of installation. (SMF-24)  Specifically, First Student wanted first of all to have the Vehicle Mount placed on the bulkhead of the buses. (i.e. on the vertical surface area above the windshield.) (SMF-24)  Both Mr. Judd and Tim Kats, General Manager and Vice President of Velociti have testified that First Student also directed that the Vehicle Mount not only had to be installed on the bulkhead, but that it must not cover existing signs, decals or equipment already on the bulkhead. (SMF-24) Further, First Student prohibited Velociti from relocating first aid and bodily fluid kits already on the bulkhead or placing the Vehicle Mount on the bulkhead storage compartment door. (SMF-24)   Mr. Judd testified that since the entirety of the bulkhead in Plaintiff's bus was already populated by other items, the only available mounting space left was where he placed it.  He further testified that consistent with Velociti policy, he preliminary sent a photograph depicting the bulkhead scene by email to his superior at Velociti who was coordinating the installation project.  He said that he received permission from his superior to place the Vehicle Mount over the steps where he did. (SMF-35)

4

Velociti cites to a document prepared in the aftermath of an earlier Zonar installation campaign done in First Student buses in 2007 as proof of First Student's installation restrictions. This document is entitled "First Student Quality Assurance Statement of Work".  It states in pertinent part under Exhibit "M" on Page 4 entitled "Velociti's Technician's Guide":

> "1) Ensure all Zonar GPS Devices and Vehicle Mounts are mounted securely to the bulk head and not covering any warnings, paperwork, etc. Be certain there are no obstructions to pull out the hand held device.  Also, under no circumstances does the cradle get mounted on top of any cabling."

(SMF 25-27)

This document had been prepared after installation issues were detected concerning Velociti's earlier work during the period when it was directly retained by Zonar. It constituted an agreement between Velociti and First Student that the previous installations would be rechecked by Velociti and Zonar and remediated by Velociti. (SMF 25-26) The requirement in this document that Zonar examine and approve Velociti's work was limited to the installations which had been performed while Velociti was engaged by Zonar. It did not pertain to those installs done by Velociti pursuant to its 2008 contract with First Student which included the Broadheadsville work.

Page 4 of this agreement contains a photograph captioned "picture depicts a typical clean installation."  This photograph shows a Vehicle Mount and handheld placed on the left side of the bus bulkhead, well away from the bus entrance and stairwell.  Notably, there is no directive in the "Velociti's Technician's Guide" prohibiting relocation of first aid or bodily fluid kits.

The 2008 Installation Contract between Velociti and First Student stated that Velociti was to install the Zonar systems "in accordance with the installation recommendations of First Mobile Technologies." (SMF-24 and Exhibit "E" ) First Mobile Technologies is a subsidiary of

First Student's parent company, First Group. (SMF-30)  First Mobile Technologies installed the Zonar systems into First Student buses early on but lacked sufficient manpower for the scope of the National project. (SMF-31)  It was therefore superseded by Velociti. (SMF-31)  The First Mobile Technology's installation recommendations call for placing the Vehicle Mount on the bulkhead in buses such as Plaintiff's to the left of the first aid kit and directly to the right of the rearview mirror. (Exhibit "N" at p. 15).  Pointedly, they add that the first aid kit may need to be relocated to accommodate placement of the Vehicle Mount in that location. (Exhibit "N" at p. 15). These directions state in pertinent part relating to the model bus used by Plaintiff:

> "2.    Locate (2) screws in the bottom row of the overhead compartment and attach the mount using the screws. The picture below shows the "mount" between the first aid kits. Moving the first aid kits may be required to allow the mounting of the equipment. The mount should be assembled to allow sufficient clearance above the cradle to allow removal of the hand held device without hitting the roof ".

Therefore, at the time Velociti installed the vehicle mount in Plaintiff's bus, all written customer installation instructions clearly illustrated placement of the Vehicle Mount away from the steps, consistent with Zonar's installation instructions. They did not prohibit movement of existing equipment on the bulkhead to accommodate a Vehicle Mount.  Moreover, Mr. Judd was instructed by Velociti in training prior to the 2008 installation that the prime location for a Vehicle Mount was to the left of the driver mirror because it was farthest away from the stairs. (SMF-34)

Plaintiffs' expert, Harold Schwartz, P.E. does not contend that the Zonar product was inherently dangerous, only that the placement of the Vehicle Mount was unsafe for use.  He does not fault Zonar's installation manual or the adequacy of the manual's instructions regarding the placement of the Vehicle Mount.   He does not suggest that any alternative warnings or

instructions should have accompanied the product or that any such warnings would have prevented Plaintiff's accident.  Further, he does not contend that there was anything about the design of the product that "called for" the installation of the Vehicle Mount where it was situated in Plaintiff's bus. Instead, he contends that Zonar somehow should have ensured that Velociti followed Zonar's installation instructions in placing the Vehicle Mount. ( See Exhibit "P" )

Zonar was not a party to the 2008 installation agreement between First Student and Velociti. (See Exhibit "P" ).There is nothing in that agreement indicating any expectation by either First Student or Velociti that Zonar would inspect, control or approve Velociti's installation work. (SMF-12 and Exhibit "P")

Zonar's role in the incorporation of its product into First Student's operations was three fold.  First, as seller, it coordinated with Velociti and First Student in shipping the product hardware along with installation instructions to meet Velociti's installation schedule.  As a service provider, it gave post-installation training to First Student sites such as Brodheadsville and, going forward, shared data collected by the Zonar systems by First Student. (SMF-39)

Lonnie Flint, a Zonar Key Account person assigned to the First Student Customer Account has testified that he was at some point made aware that Velociti was having a problem in some instances finding space on the bulkhead of buses to accommodate Vehicle Mounts.  Mr. Flint testified that he does not recall whether he was told this before or after the Brodheadsville installation or whether he was told of it by someone from Velociti or First Student.  In any event, in response he did no more than reiterate the Zonar installation instructions by referring them to the Zonar Installation Manual to find a solution consistent with its guidelines. He was not told that Velociti was installing Vehicle Mounts over the steps of buses. (SMF-36)

7

Zonar itself did not prohibit movement of any existing equipment on bus buckholds to allow placement of Vehicle Mounts. (SMF-37)  Zonar did not maintain any policy of inspecting Velociti's installation work generally. (SMF-41)  Zonar would not recommend that a Vehicle Mount be installed as depicted in Plaintiff's bus inasmuch as that location violated the guidelines of Zonar's Installation Manual. (SMF-38)

Zonar's exposure to the First Student bus fleet was limited. On occasion and under limited circumstances, if Zonar detected by remote data transmission that an installed unit was not functioning properly or a customer reported a possible installation issue, Zonar would target that vehicle for troubleshooting. (SMF-40)  If a Zonar trainer was on site when the particular issue arose then the trainer would be assigned to do the troubleshooting. (SMF-40)

Jacob Gabbard of Zonar went to the Brodheadsville site to conduct training after the site installation had been completed by Velociti. (SMF-44)  While conducting training he went onto one or two random buses and noted that on one that the Zonar "engine tags" was not affixed properly.  Vehicle tags are small disks that are mounted by the installer at prescribed locations in and around the perimeter of the bus.  During an inspection the handheld unit is used to register the presence of the driver at the tagged location.  An engine tag is properly mounted on the outside of the bus.  Inasmuch as a properly functioning engine tag is essential to the operation of the Zonar system, Mr. Gabbard inspected the other engine tag locations on the available buses on site and found that many others had a similar problem.  He addressed those which he could and also notified his superior at Zonar, Velociti and the local First Student management of the issue for logistical purposes.  Zonar responded by sending additional engine tag and adhesive hardware to First Student at the site and Velociti recalled Jacob Gabbard to properly install the engine tags on the remaining buses.  Mr. Gabbard's undertaking was expressly limited to the

engine tag issue which had become apparent and he did not board any of the buses to search for any other installation issues. He has testified that he did not recall seeing the Vehicle Mount installed over the steps in the one or two buses he entered. (SMF-44-49)

Jacob Judd has testified that Mr. Gabbard arrived on site at Brodheadsville while Velociti was doing the original installation work.  He said that Mr. Gabbard told him that he was there to be "making sure I was doing what I was supposed to be doing."(SMF-43)   However, such an encounter has been disproven as Velociti performed its installation in mid-November 2008 and Mr. Gabbard did not arrive there to train until December 3rd and 4th. (SMF-44)

**C.      Statement of Questions Presented**

Whether summary judgment is appropriate as to Plaintiff's Strict Liability claim inasmuch as Plaintiffs have failed to adduce prima facie evidence that Zonar's product was defective or that it caused Plaintiffs' harm.

SUGGESTED ANSWER:

IN THE AFFIRMATIVE

Whether summary judgment is appropriate as to Plaintiff's Negligence claim as Plaintiff's have failed to adduce prima facie evidence of the necessary duty of care or breach thereof by Zonar.

SUGGESTED ANSWER:

IN THE AFFIRMATIVE.

**D.      Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, Answers to Interrogatories and Admissions on file together with the

Affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court has recognized that the moving party "bears the initial responsibility of informing the District Court of the basis for its motion, in identifying those portions . . . which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has filed a properly supported motion, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An issue is material only if it could affect the result of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

All the facts and inferences must be viewed in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must supply sufficient evidence and not mere allegations, for a reasonable jury to find in its favor. *Olson v. General Electric Astrospace*, 101 F.3d. 947, 951 (3rd Cir. 1996). "[T]heir can be 'no genuine issue as to any material fact' . . . [where the non-movant's] complete failure of proof concerning an essential element of [Its] case necessarily renders other facts immaterial." *Celotex* at 317. Citing *Celotex*, the Third Circuit has stated: "the non-moving party cannot resist the properly supported Motion for Summary Judgment merely by restating the allegations of his Complaint; rather, he must point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 Fed. Appx. 743 (3rd Cir. 2005). The non-movant must base his opposition on concrete evidence in the record. *Celotex* at 322-323. The failure of the non-movant to cite such evidence entitles the moving party to summary judgment.

## II. <u>LEGAL ARGUMENT</u>

**A.      Strict Liability**

Under Pennsylvania law, a strict liability claim requires that the plaintiff show that the product was defective, that the defect proximately caused the plaintiff's injury, and that the defect causing the plaintiff's injury existed at the time it left the seller's hands. <u>*Pavlik v. Lane Limited/Tobacco Experts International*</u>, 135 F.3d 876, (3rd Cir. 1998), <u>*Nathan v.Techtronic Industries North America, Inc.*</u>, 2015 WL679150 (M.D. Pa.2015). A plaintiff may show that a product was defective by showing a defect in manufacturing, defect in design or defect due to the inadequacy or lack of warnings. <u>*Blake v. Greyhound Lines, Inc.*</u>, 448 F.Supp.2d 635 (2006).

Here, the gravamen of Plaintiffs' strict liability claim is not that the Zonar product was dangerous for use in and of itself.  Plaintiff was not injured *by* the product. Rather, her accident allegedly occurred as a result of her being forced to reach in an awkward and unstable manner over an open stairwell to use it. Plaintiffs' liability expert does not suggest that there was anything about the inherent design or function of the product which called for it to be installed where it was in Plaintiff's bus. Thus the issue presented in a strict liability context is whether Zonar adequately warned at the time of sale against placement of the Vehicle Mount in such a location.

An otherwise properly designed product may still be unreasonably dangerous for strict liability purposes if the product is sold without sufficient warnings to apprise the ultimate user of the latent dangers of the product.  <u>*Pavlik v. Lane Limited – Tobacco Exporters Int'l*</u>, 135 F.3d. 876, 881 (3rd Cir. 1998). In pursuing a failure to warn theory a plaintiff must show that a warning was either absent or inadequate and that the user would have avoided the risk had he been advised of it by the seller. <u>*Phillips v. A-Best Prods., Co.*</u>, 665 A.2d 1167, 1171 (Pa. 1995).

A warning of inherent dangers is sufficient if it adequately notifies the intended user of the unobvious dangers inherent in the product. _Macovick v. Westinghouse Elec. Corp._, 575 A.2d 100, 102 (Pa. 1990). There is no duty to warn where the danger is open and obvious. _Fleck v. KDI Sylvan Pools, Inc._, 981 F.2d 107, 119 (3rd Cir. 1992).  Where a warning or instruction is given, the seller may reasonably assume that it will be read and heeded, and a product bearing such a warning, which is safe for use if it is followed, is not a defective condition nor is it unreasonably dangerous. _Davis v. Berwind Corp._, 690 A.2d 186, 190 (Pa. 1997).   The law presumes that warnings will be obeyed. A manufacturer is not required to warn against dangers that may arise if its warnings are not heeded. _Davis_ at 190.

Placement of a Vehicle Mount in the extreme upper right hand corner of a school bus over an open set of steps is so obviously unsuitable for use that arguably no warning against it need be given. There is nothing latent or unobvious about the danger posed or the way to avoid it.  Nonetheless, Zonar provided installation instructions regarding product placement with its device. The foremost of these instructions was to not place any component of the product, including specifically the Vehicle Mount, in a spot which is difficult to access.  Both Zonar's customer, First Student and First Student's installation company, Velociti, have acknowledged that each knew of this instruction and knew it to mean that the Vehicle Mount should not be placed where it was on Plaintiff's vehicle.

 First Student policy from the beginning of the installation process was to avoid mounting the handheld over the stairwell of buses. Velociti's installer has acknowledged that the installation at issue was in contravention not only of Zonar's "accessibility" installation instruction but also others provided in Zonar's manual to avoid placing a Vehicle Mount near dirty, dusty or damp areas such as near entranceways. During the installation process, Velociti's

installer was so concerned about placement of vehicle mounts in a location such as where it was placed in Plaintiff's bus that he sent a photograph depicting the scene to his superior at Velociti asking for permission to do so.

"The adequacy of a warning is evaluated solely on the basis of whether the warning was inadequate and a better warning would have prevented the injury." _Blake_ at 644. Significantly, Plaintiffs' liability expert, Harold Schwartz, P.E. does not challenge the adequacy of the instructions provided in Zonar's installation manual.  He does not suggest any alternative or additional warnings which should have accompanied the product itself or that different installation instructions would have prevented Plaintiff's accident. There is no evidence of record that the Zonar device would not have been safe for use had the Zonar installation manual instructions been followed.

The paramount concern is whether the product was safe for use when it left Zonar's hands. Its instructions sufficiently forewarned against installation of the Vehicle Mount where it was placed in Plaintiff's bus. Therefore the Zonar product was neither defective nor the cause of Plaintiff's accident.

Similarly, the notion of a post-sale duty to warn is inapplicable in this strict liability analysis. First of all, the installed location of the Vehicle Mount in Plaintiff's bus was open and obvious such that the violation of Zonar's installation instructions would be instantly evident to First Student without an alert from Zonar. More importantly, a seller has no obligation to render a post-sale warning where the product was not defective to begin with. _Lynch v. McStome and Lincoln Plaza Associates_, 568 a.2d 1276 (Pa. Super 1988).

Summary Judgment on the Strict Liability claim is therefore warranted as Plaintiffs have failed to adduce sufficient evidence to establish a prima facie case against Zonar on the elements of defectiveness or causation.

**B.      Negligence**

Plaintiffs' liability expert does not contend that Zonar was negligent in the design or manufacture of its product or that its installation instructions were inadequate.  Rather, he asserts that Zonar had a responsibility to ensure that "Vehicle Mounts were properly installed by Velocity under their contract and guidelines provided by Zonar." (Exhibit "P")  In other words, he says that Zonar not only had a duty to warn but also to make sure that its warnings were followed. The evidence of record shows that Zonar was never charged with or assumed such a responsibility. Mr. Schwartz also contends that Velociti was acting as the agent of Zonar. However, it is clear that no evidence of agency exists inasmuch as Velociti was retained by First Student and was at all times acting as its contractor.

To establish a prima facie negligence claim, Plaintiffs must show that:  (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached the duty; (3) such breach caused the injury in question; and (4) Plaintiff incurred actual loss or damage. _Mracek v. Bryn Mawr Hospital_, 610 F.Supp. 2d. 401 (E.D. Pa. 2009). "Before a person may be subject to liability for failing to act in a given situation, it must be established that the person has a duty to act; if no care is due, it is meaningless to assert that a person failed to act with due care." _Wenrick v. Schloemann-Siemag Aktiengesell-Schaft_, 564 A.2d 1244, 1247 (Pa.1989).

As noted previously, starting in 2007, First Student adopted the large scale implementation of the Zonar system for conducting and recording vehicle inspections by its bus drivers.  Initially, Zonar itself retained Velociti, a professional installation company, to install its

product on First Student buses.  In addition, First Student preliminarily engaged another installer, First Mobile Technologies for some of the early installations.  However, starting July 2008, these relationships changed when First Student contracted directly with Velociti to do the Zonar installations going forward.   Velociti placed the Zonar equipment into Plaintiff's bus in Brodheadsville, in November 2008 pursuant to this agreement.

Zonar was not a party to the 2008 contract between Velociti and First Student.  Unlike the earlier statement of work agreement which called for Zonar's participation in quality assurance inspections of already completed Velociti installations, the 2008 agreement does not reference any expectation that Zonar was in any way to engage in installation work, inspect completed installations or ensure that Velociti's performance was in conformity with Zonar's installation guidelines.   To the contrary, the contract states that Velociti would be directly responsible to First Student for its performance as noted below:

> "Velociti will provide a Project Manager and Data Manager who will function as the primary points of contact and have responsibility for all Velociti activities.  The Project Manager and Data Manager will work with a specified First Student contact to ensure that all conditions are met and accomplished to First Student's reasonable satisfaction."

( Exhibit "E" at p. 5)

Moreover, there is no evidence of record that Zonar assumed any broader responsibilities during the post July 2008 installation process.  First of all, there is no testimony or documents from any source indicating that Zonar ever directed or condoned placement of a Vehicle Mount as depicted in Plaintiff's bus.  To the contrary, Zonar's uncontradicted employee testimony was that Zonar would not recommend placement of a Vehicle Mount at that location. When informed that Velociti reported difficulty finding space within First Student's restrictions on bus buckholds, even assuming arguendo that such information was conveyed to Zonar prior to the

15

Brodheadsville installation, Zonar in the person of Lonnie Flint simply reiterated that any resolution to the problem must be consistent with Zonar's installation guidelines. Those guidelines were admittedly adequate and continued to apply regardless of any installation constraints imposed by First Student. Further, there is no evidence that Mr. Flint was informed that Velociti intended to place a vehicle mount in an area of Plaintiff's bus which all agree was a "difficult to access area" over the steps and next to the entryway door.

Secondly, there is no documentation or testimony of record that Zonar separately assumed a general obligation to inspect Velociti's work. On occasion and under limited circumstances, if Zonar detected by remote data transmission that an installed unit was not functioning properly or a customer reported a possible installation issue, Zonar would target that vehicle or vehicles for troubleshooting. This does not equate with the broader responsibility suggested by Plaintiffs' expert.

Admittedly, Velociti installer Jacob Judd has testified that Zonar employee, Jacob Gabbard was on site at Brodheadsville during Velociti's installation. Judd says that Gabbard purportedly said that he was there to make sure Judd was doing what he was supposed to be doing. However, the possibility of this exchange has been conclusively refuted in discovery. Judd's installation took place in November of 2008 and Mr. Gabbard was not on site until December 3rd and 4th of that year. Moreover, Mr. Gabbard was on site as a trainer and not to perform quality control inspections. His interaction with the Brodheadsville buses was expressly limited to the specific issue he happened to encounter with the engine tags. That issue did not implicate the existence of any wider installation issues. The discovery of a missing engine tag does not confer a duty to inspect all buses for all possible mis-installation issues where such a duty did not exist to begin with.

16

First Student directed Velociti to install the Vehicle Mount on the bulkheads of its buses. Velociti contends that First Student further forbade covering existing signage or disturbing equipment already mounted on the bulkhead. There is of course evidence of record to the contrary. The First Mobile Technology installation recommendations, which Velociti contracted to follow, state that movement of the first aid kits was permitted to allow placement of the Vehicle Mounts. Thus there was an existing method available to Velociti to safely install Plaintiff's bus. However, that dispute does not create a triable issue regarding Zonar. Regardless of the reasonableness of his actions Velociti's installer has testified that he was constrained to place the Vehicle Mount where he did in Plaintiff's bus despite the fact that in doing so he was deliberately contravening Zonar's installation instructions. There is no evidence of record that Zonar knew of or permitted that action on his part.

Except for one instance, Plaintiffs' expert report is silent as to any factual underpinnings for his conclusion that Zonar was responsible for ensuring that its installation instructions were followed. In that regard, he quotes from a letter authored by an attorney representing First Student. This contains statements purportedly made by Eric Kloss and Jason McIntosh concerning their involvement in the installation process as employees of First Student. The information attributed to Mr. McIntosh reads:

> ". . . he was the point person for approving installation locations during the nationwide Zonar install. His recollection is choosing three possible locations on each type of bus when the project first began. He never approved a location above the front entrance door or stairwell. He recalls locations on the left to mid bulk head and dashboard area. Is (sic) a sign or other obstruction were in the way, the installer had authority to relocate the obstruction, if feasible. If none of the three initial locations worked, he recalls Zonar and Velociti coordinating an alternative location specifically without consulting him. He does not recall any specific inquiries, but he would not have authorized an installation above the front entrance or stairwell."

17

The purported statement of Mr. McIntosh as constituted is a form of double hearsay offered for the truth of the matter stated.  Federal Rule of Evidence 703 states that an expert may rely on such evidence only if it is of the type reasonably relied upon by experts in his particular field in forming opinions or inferences upon the subject.  There is nothing within the McIntosh statement that remotely touches upon opinions or conclusions in the field of engineering.  Accordingly, the statement should be disregarded by the Court.

Assuming arguendo that the McIntosh statement can be reduced to admissible evidence otherwise, and is accepted as true for purposes of this motion, it is still not probative. It is therefore irrelevant to the issue of whether Zonar had or breached a duty of care under the circumstances.  Specifically, the statement pointedly does not state that the decision to place the vehicle mount as depicted in Plaintiff's bus was in fact coordinated between Zonar and Velociti. It contains no proof that the issue was even discussed between the two; that such a discussion, if any, occurred before the Brodheadsville installation, what information was conveyed to Zonar and what recommendations, if any, Zonar allegedly would have made on the issue.  Without more, the statement cannot be considered as creating a triable issue as all of the missing information can only be supplied by speculation.

In _Wenrick_, Supra, a press manufacturer incorporated the defendants electrical control system into a finished press.  An unguarded electrical switch supplied as part of defendant's control was mounted by the manufacturer next to a set of steps when the press was installed in the press owner's factory.  A passing workman using the steps inadvertently activated the switch leading to plaintiff's death when the press unexpectedly started.  The Court noted that the decision as to where to place the defendant's unguarded switch was made entirely by the press manufacturer. There was evidence that the defendant's employee had seen the location and

18

unguarded nature of the switch while assisting on debugging the press after it was installed. Plaintiff contended that having seen the dangerous condition the defendant had a duty to warn plaintiff's employer of the danger posed and was culpable in both strict liability and negligence.

The court found that the defendant was not strictly liable because the design of the electrical control did not dictate where it would be placed by the manufacturer and the defendant had no input into where it would be placed.  It further found that the defendant was not liable in negligence even though it knew of the danger created.  In rejecting plaintiff's argument that the defendant had a duty to warn plaintiff's employer of the danger, the Court first analyzed the applicability of the Restatement (Second) of Torts § 324A which states:

> "One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of third persons or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> (a)      his failure to exercise reasonable care increases the risk of such harm; or
> (b)      he has undertaken to perform a duty owed by the other to the third persons; or
> (c)      the harm is suffered because of reliance of the other or the third person upon the undertaken."

The Court found that the defendant was not liable under this section because it had not undertaken any responsibility for performing a safety inspection of the press on behalf of the employer.  Further, there was no evidence that plaintiff or his employer relied on the defendant to make such an inspection.   The same analysis applied even under theories of ordinary negligence.  Notably, the Court found no duty even though the defendant knew of the dangerous condition because "mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act."  At p. 48

In _Blewitt v. Man Roland, Inc._, 168 F. Supp. 2d 466 (Ed. Pa. 2001), the defendant maintenance company noted that a customer's printing press lacked roller guards.  Although its "standard practice" was to warn press owners when such guards were missing, it failed to do so. The Court in granting summary judgment noted that there was no evidence that the defendant's "standard practice" equated to the assumption of a duty towards the plaintiffs.  In _Reeser v. NGK North American, Inc._, 14 A.3d 896 (Pa. Super. 2011), the danger posed to the public from elevated toxic emissions from a plant did not create a duty on the part of the emission inspector to notify the public as he had only undertaken a responsibility to report his findings to the plant owner. Similarly, in _Malloy v. Doty Conveyer_, 820 F.Supp. 217 (Ed. Pa. 1993) an installer did not assume a contractual obligation to conduct safety inspections of the product it was installing and therefore was not liable to plaintiff's employee for failure to warn of the dangerous condition of the conveyer to plaintiff's employer.

Here, there is no actionable evidence that Zonar assumed any undertaking to direct Velociti's work in the field or to conduct safety inspections of the work that Velociti performed pursuant to its 2008 agreement with First Student.  The only duties it had were to cooperate with Velociti and First Student on the logistical end by providing timely shipments of its product for installation, providing training and sharing data. Moreover, unlike the defendants in the aforementioned cases, there is not even evidence that it knew of Velociti's decision to place the device in a dangerous position in Plaintiff's bus.

Neither Velociti nor First Student have offered any evidence that they expected or relied on Zonar to ensure that Velociti performed properly. That responsibility rested solely with Velociti under its agreement with First Student.  Inasmuch as both Velociti and First Student have acknowledged that they understood and appreciated Zonar's installation instructions, Zonar

properly fulfilled any obligations it owed to act properly as a seller under either strict liability or negligence theories.

Moreover, the danger created by the location of the Vehicle Mount in Plaintiff's bus was open and obvious to all.  There was no hidden danger that would only become apparent when an injury occurred.  Plaintiff's employer, which was in complete possession and control of the Plaintiff's bus for almost two years post-installation, would have been fully aware of where the vehicle mount was located.  Under these circumstances, any additional warning from Zonar would be a meaningless statement of the obvious. There being no issue of material fact on the issues of whether Zonar had or breached a duty of care, summary judgment is warranted on Plaintiff's negligence claim.

Wherefore, Defendant, Zonar System's Inc. respectfully requests that summary judgment be entered in its favor.

Respectfully Submitted,

**LAW OFFICES OF THOMAS J. KELLEY**

/S/ Thomas J. Kelley, Esquire
Thomas J. Kelley, Esquire
50 Glenmaura National Blvd., Ste. 300
Moosic, PA 18507
(570) 343-6570; (570) 343-5183 (fax)
**tkelley@travelers.com**
ID No. 24777