**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHIRLEY DORSHIMER and | : | CIVIL ACTION - LAW |
| ROBERT DORSHIMER | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiffs | : | |
| | : | JUDGE MANNION |
| vs | : | |
| | : | |
| ZONAR SYSTEMS, INC. | : | |
| | : | |
| Defendant | : | |
| and | : | |
| | : | |
| VELOCITI, INC. | : | |
| | : | |
| Additional Defendant | : | No.: 3:13-CV-00553 |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**
**OF ZONAR SYSTEMS, INC.**

NOW COME the Plaintiffs, Shirley Dorshimer and Robert Dorshimer, and

hereby submit the following brief in opposition to the Motion for Summary Judgment

filed by the Defendant, Zonar Systems, Inc.

## I.    COUNTER-STATEMENT OF THE FACTS

This matter arises out of an incident that occurred on August 30, 2010.

Specifically, on that date, the Plaintiff, Shirley Dorshimer, sustained injuries while

in the course and scope of her employment as a bus driver for First Student.  (See

Document 1, Exhibit B, at paragraph 6.)  At the time, Mrs. Dorshimer, was attempting

to use a Zonar Systems, Inc. electronic vehicle inspection system as required by her employer.  Id.   The charging unit for the Zonar System was mounted on the passenger side of Mrs. Dorshimer's bus against the front panel above the windshield. (See Document 1, Exhibit B, at paragraph 7).   As Mrs. Dorshimer reached up from the floor of the bus to the area of the hand-held cradle, she was caused to fall down the steps and out of the bus on to the concrete floor of the First Student garage.  Mrs. Dorshimer sustained severe, disabling injuries as a result.  (See Document, Exhibit B, paragraph 24).

The Zonar electronic vehicle inspection system at issue was designed, manufactured and sold by Defendant, Zonar Systems, Inc.  (See Defendant's Exhibit C, Deposition of Andre Horochiwsky, at page 32).   The product is known as the EVIR HD GPS.  Id.   The product includes an electronic hand-held device called the EVIR, through which a driver can conduct and record required pre-trip and post-trip vehicle inspections, including inspections of school buses.  Id.   When not in use, the EVIR is stored in a vehicle mount which is required to be affixed inside the vehicle. (See Defendant's Exhibit D).   The vehicle mount serves two purposes.  First, it serves as a charging station for the hand-held.   Second, it allows for information collected by the hand-held to be downloaded to a computer in the GPS unit of the system, such information thereafter being electronically transmitted to a Zonar

receiving station, located remotely, for date storage purposes.  (See Defendant's Exhibit C, deposition of Andre Horochiwsky, at pages 34-39).  School bus drivers such as Shirley Dorshimer are required to access the remote hand-held and replace it into the charging station four to six times a day in forming their pre and post-trip inspections. (See expert report of Harold A. Schwartz, Defendant's Exhibit P, at page 4).  It was during this process that Mr. Dorshimer sustained injury.

The GPS unit in Mrs. Dorshimer's bus was installed by Velociti.   Velociti is a professional services company that provides labor services primarily in the fleet division, installing any form of technology into a vehicle.  (See Defendant's Exhibit F, Deposition of Tim Kats, at page 17).  The primary business focus of Velociti is on companies like Zonar.  (Id. at p. 20).   Beginning in 2010, Velociti has been a preferred installer for Zonar, an agreement through which Zonar provides a certain volume of business to Velociti on a yearly basis. (Id. at page 20-21).

Prior to installing the Zonar System on the buses at the First Student location at Pleasant Valley School District, including Mrs. Dorshimer's bus, Velociti performed similar installations for Zonar in 2007.   (See Defendant's Exhibit F, Deposition of Tim Kats at page 38).  As part of that installation, Zonar provided training to Velociti employees on how and where to install the GPS units.  (See Defendant's Exhibit C, Deposition of Andre Horochiwsky, at page 47).

3

First Student was an important client to Zonar.  Beginning in 2007 and into 2008, Zonar dedicated a number of employees specific to First Student.  (See Deposition of Lonnie Flint, Defendant's Exhibit G at pages 11, 17).  Employees of Zonar transferred from Seattle, Washington to Cincinnati, Ohio, opening up an office where they shared space and were "co-located" with First Student employees.  (See Deposition of Dustin Koons, Defendant's Exhibit K at pages 15 and 19).

Consistent with its prior dealings with Velociti, and in consideration of the importance of its relationship with First Student, Zonar introduced Velociti to First Student as its installer.  (See Deposition of Andre Horochiwsky, Defendant's Exhibit C, at page 42; Deposition of Tim Kats, Defendant's Exhibit F, at page 40; Deposition of Dustin Koons, Defendant's Exhibit K,at page 30).  According to Karen DeNardo, the Location Manager for First Student at its Pleasant Valley School District's location, Zonar chose Velociti as the installer for the Pleasant Valley project.  (See Deposition of Karen DeNardo, Plaintiffs' Exhibit A attached hereto, at page 68). Zonar and Velociti then arranged the installation.  Id.

Eric Kloss also confirmed that Zonar and Velociti worked together in the installation process at Pleasant Valley.  (See Deposition of Eric Kloss, Defendant's Exhibit A, at page 12).   The work that Zonar did with Velociti included work regarding the safe placement of the cradle.  (See Deposition of Eric Kloss,

4

Defendant's Exhibit A, at page 47).  Due to the importance of First Student as a client, Zonar agreed to perform quality assurance checks after the Pleasant Valley School District installation to ensure compliance with the hand-held location.  (See Deposition of Andre Horochiwsky, Defendant Exhibit C, at pages 64-65, 67; see also Exhibit 2 to Horochiwsky Deposition, page 12).

In fact, Zonar did perform such quality control work.  Jacob Judd was the Velociti employee who performed the installation work at the Pleasant Valley School District site of First Student.  (See Defendant's Exhibit L, Deposition of Jacob Judd at page 16).  Mr. Judd testified that Zonar employee, Jacob Gabbard, was on site during the installation, arriving on the third or fourth day of the installation projection.  (Id. at p. 24, 118-119).  Mr. Gabbard was there to perform quality control work for Zonar.  (Id. at page 25).  According to Mr. Judd's testimony, Mr. Gabbard did perform the quality control work, checking the placement of every hand-held on every bus.  (Id. at page 123-125).

Mr. Judd testified that the Pleasant Valley School District installation was the only job in which he met Jacob Gabbard.  (See Defendant's Exhibit L, Deposition of Jacob Judd at page 25).  He recalled speaking to Mr. Gabbard at the site.  (Id. at page 123).  Mr. Judd testified that Lonnie Flint, another employee of Zonar, was also on site during the Pleasant Valley School District installation.  (See Deposition of

Jacob Judd, Defendant's Exhibit L, at pages 27 and 86).   Despite being on site at the Pleasant Valley School district installation job and checking every bus including the placement of the hand-helds, no one from Zonar objected to the location.   (See Deposition of Jacob Judd, Defendant's Exhibit L, at page 51).

Testimony from witnesses of both the Defendant and the Additional Defendant, acknowledge that the hand-held portion of the GPS was installed incorrectly.   Jacob Judd testified that he had the installation guide present with him at the Pleasant Valley School District and that the guidelines for safe installation were not followed. (See Deposition of Jacob Judd, Defendant's Exhibit L, at pages 52, 60, 61).   Lonnie Flint, the Zonar employee dedicated to First Student, admitted that the installation was wrong and did not follow the guidelines.   (See Deposition of Lonnie Flint, Defendant's Exhibit G, at page 42).   Jacob Gabbard, the Zonar employee who performed the quality assurance work, was protected by counsel from admitting that quality control failed to ensure safe installation.   (See Deposition of Jacob Gabbard, Defendant's Exhibit O, at page 33).

Despite the fact that the evidence adduced through discovery reveals that Zonar introduced Velociti to First Student, Zonar chose Velociti as the installer for the Pleasant Valley School District, that Zonar was required to perform quality assurance checks on the Velociti work, and that Zonar did in fact perform such quality

assurance work, Zonar has filed a Motion for Summary Judgment requesting that it be dismissed from this matter.   Plaintiffs submit this Brief in Opposition to Defendant's filing.

## II.   <u>COUNTER-STATEMENT OF ISSUES</u>:

A.   Whether defendant's motion for summary judgment should be denied as to plaintiffs' strict liability claim, when the defendant, Zonar Systems, Inc. failed to reasonably ensure that the product that it manufactured was reasonably installed?

Suggested Answer:   In the affirmative.

B.   Whether Defendant's Motion for Summary Judgment as to Plaintiff's negligence claim should be denied when Defendant failed to perform adequate quality assurance checks to determine whether the hand-held device was installed correctly?

Suggested Answer:   In the affirmative.

## III.   <u>ARGUMENT</u>:

Pursuant to F.R.C.P. 56, summary judgment may be entered only if the pleadings, discovery, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts, such that the moving party is entitled to judgment as a matter of law.  The party moving for summary judgment has the burden of proving that there is no issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Additionally, in ruling on a motion for summary judgment, the court is required to draw all reasonable

inferences from the underlying facts in a light most favorable to the non-moving party.  Hugh v. Butler County Family YMCA, 418 F.3d 265 (3rd Cir. 2005).  To preclude summary judgment, there must be a genuine issue of material fact; that is the evidence is such that a reasonable jury can return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When addressing a summary judgment motion, the Court's inquiry must focus on whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law.  Id.

In the instant matter, the Plaintiff has produced sufficient evidence through discovery to require the submission of this matter to a jury.  Genuine issues of material fact exist as to all of the allegations made by the Defendant in support of its summary judgment filing.  As such, Defendant's motion must be denied.

**A.     Zonar Systems, as the manufacturer of the product, did not warn Shirley Dorshimer, the ultimate consumer.**

In Pennsylvania, a manufacturer, "is effectively the guarantor of his products' safety."  Salvador vs. Atlantic Boiler Co., 457 Pa. 24, 319 A.2d 903 (1974).  To establish a cause of action for strict liability, a plaintiff must prove that the defendant placed a product on the market in a "defective condition."  Tincher vs. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014).  To prove that a "defective condition" exists, the

Plaintiff must show that either (1) the danger is unknowable and unacceptable to the average or ordinary consumer; and (2) a "reasonable person" would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions.  Id.

Defective conditions give rise to three types of strict products liability claims: (1) manufacturing defects, (2) design defects; and (3) warning defects.  See French vs. Commonwealth Associates, 980 A.2d 623 (Pa. Super. 2009).   As Defendant correctly sets forth, Plaintiffs' strict liability claim is based on a theory of failure to warn.

A product is defective due a failure to warn where the product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product.  Donough vs. Lincoln Electric Co, 936 A.2d 52 (Pa. Super. 2007).   "[A] manufacturer can be deemed liable only for harm that occurs in connection with the product's use by an intended user; the general rule is that there is no strict liability in Pennsylvania relative to non-intended uses even when foreseeable by a manufacturer."  Pa. Dept. of General Services vs. United States Mineral Products Co., 587 Pa. 236, 898 A.2d 580 (2006).

In the instant matter, Shirley Dorshimer, as the First Student bus driver assigned to drive bus 42, was the ultimate user of the Zonar Systems, Inc. GPS

product.  Her employer, First Student, was the purchaser of the GPS units.  (See Deposition of Tim Kats, Defendant's Exhibit F, Deposition Exhibit 1).  Despite this fact, Zonar offered no warnings to Shirley Dorshimer or to First Student regarding the placement of the GPS hand-held.

The record reveals that Zonar was aware that certain placements of the hand-held could be dangerous to the ultimate consumer, Shirley Dorshimer.  Specifically, in its general guidelines for layout, Zonar set forth the following: ...

(2) Do not install Zonar equipment below windows and doors which open to the vehicles exterior to prevent water damage...

(4) Avoid mounting equipment in difficult to access areas.

Further, under specific guidelines for the GPS vehicle mount 2010, Zonar set forth ...

(3) Do not install below doors or windows which open to the vehicle's exterior to present water damage

(4) Avoid mounting equipment in difficult to access areas.

(See deposition of Tim Kats, Defendant's Exhibit F, Deposition Exhibit 3).

Unfortunately, despite selling its product to First Student for use by its bus drivers, Zonar failed to provide the above warnings to First Student or Mrs. Dorshimer.  Instead, they simply included these warnings in the installation material

10

provided to its preferred installer, Velociti.   As set forth in Plaintiffs' expert report (Defendant's Exhibit P), Zonar's failure to warn created two problems, leading to Mrs. Dorshimer's accident.  First, a person attempting to reach the hand-held portion of the GPS unit would be on a step of narrow width reaching upward causing an unsafe and dangerous condition.  (See Defendant's Exhibit P at page 3).   Second, a person of short stature, including Mrs. Dorshimer, at 5'2" tall, would have to reach and stretch to retrieve the hand-held from the vehicle mount while either on the narrow step or if on the bus floor, she would be force to reach outward, creating another unsafe and dangerous condition.  (See Defendant's Exhibit P at page 3).

In addition to failing to warn the ultimate user of the hand-held that its placement was not safe, Zonar should have recognized that bus drivers like Mrs. Dorshimer would not recognize the risk.  As Jacob Judd testified, the employer was just a novice when it came to the GPS system and all of its components.   (See Defendant's Exhibit L at page 107).

Additionally, according to the evidence of record, Zonar checked every bus to ensure safe placement.  (See Defendant's Exhibit L at page 125).   Further, Zonar trainers traveled to the First Student site at Pleasant Valley and trained the bus drivers on the use of the hand-held, retrieving at least some of the hand-helds from the incorrectly placed cradles.  (See Deposition of Dustin Koons, Defendants Exhibit K,

page 34).  Finally, Zonar trained Velociti on the installation process of the GPS units. (See Deposition of Andre Horochiwsky, Defendant's Exhibit C at page 47; see Deposition of Jacob Judd, Defendant's Exhibit L, at page 28).

To proceed on a failure to warn theory, a plaintiff must establish that (1) a warning was either absent or inadequate, and (2) the user would have avoided the risk had he been advised of it by the seller.  Blake vs. Greyhound Lines, Inc., 448 F.Supp. 2d 635 (E.D. Pa. 2006).  To show that a warning is inadequate, a plaintiff must show that the deficiency in warning made the product unreasonably dangerous.  See Phillips vs. A-Best Products Co., 542 Pa. 124, 665 A.2d 1167 (1995).  To establish causation, "the plaintiff must establish that it was the total lack or insufficiency of a warning that was both a cause in fact and the proximate cause of the injuries." Pavlick vs. Lane Ltd./Tobacco Express International, 135 F.3d 876 (3rd Cir. 1998). The question of causation in Pennsylvania is normally for the jury.  Conti v. Ford Motor Co., 743 F.2d 195 (3rd Cir. 1984).

As set forth above, Zonar, as the manufacturer of the product in question, provided no warning to the ultimate user.  Shirley Dorshimer, as required by her employment, had not choice but to use the hand-held device in the dangerous position.  Plaintiffs' expert report establishes that Mrs. Dorshimer was injured when reaching for the GPS in the dangerous position.  Plaintiff has provided sufficient

evidence to establish that Zonar failed to warn her of the dangerous placement of the GPS and, that such failure caused her injuries.  At a minimum, discovery in this matter has produced sufficient evidence to create a genuine issue of material fact on these issues such that they should be determined by a jury.   For these reasons, the Motion for Summary Judgment of Zonar pertaining to Plaintiffs strict liability claim must be denied.

### B.      Zonar was negligent in permitting the improper installation.

In actions sounding in negligence based upon a product, as in any other types of negligence action, the elements of the cause of action are: (1) a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the requisite standard; (3) a causal connection between the conduct and resulting injury; and (4) actual loss or damage resulting to the interests of another.   Petrucelli vs. Bohringer and Ratzinger, 46 F.3d 1298 (3rd Cir. 1995).

Negligence in a case involving a product as in any other type of negligence action has been defined as the performance of an act that a reasonably prudent person would not perform, or the failure to perform an act that a reasonable prudent person would perform.  Taylor vs. Danek Medical, Inc., 1998 WL 962062 (M.D. Pa. 1998). In any negligence claim, a duty can arise from the relationship between the parties.

Fireman's Fund Insurance Co. vs. Xerox Corp. 30 F. Supp. 2.d 823 (N.D. Pa. 1998).

Further, as a general rule, any person who performs an affirmative act is under a duty

to others to exercise the care of a reasonable person to protect them from an

unreasonable risk of harm arising from the act.   Suchomajcz vs. Hummel Chemical

Co., 524 F.2d 19 (3rd Cir. 1975).

     In its papers, Zonar attempts to escape responsibility for its negligent acts by

basically arguing that its only role in the installation process was to timely ship

products for installation, provide training and to share data.  In its Brief, Zonar states,

"Here, there is no actionable evidence that Zonar assumed any undertaking to direct

Velociti's work in the field or to conduct safety inspections or the work that Velociti

performed pursuant to its 2008 agreement with First Student."  (See Defendant's

Brief at page 20).   Zonar further states, "[U]nlike the Defendants in the

aforementioned cases, there is not even evidence that it knew of Velociti's decision

to place the device in a dangerous position in Plaintiff's bus." (See Defendant's Brief

at page 20).  Both of these statements are rebutted by the factual evidence of record.

     As set forth above, both Zonar and Velociti admit that Zonar introduced

Velociti to First Student.  (See Deposition of Andre Horochiwsky, Defendant's

Exhibit C, at page 42; see Deposition of Tim Kats, Defendant's Exhibit F, at page

40).  Further, Mr. Horochiwsky, a Zonar witness, testified that after their Pleasant

Valley School District job, Zonar was to ensure compliance with the hand-held location.  (See Deposition of Andre Horochiwsky, Defendant's Exhibit C, at pages 64-65).  Zonar was to do this by performing a quality assurance check.  (See Id. at page 67).  Further, Zonar did perform a quality assurance check.  As Jacob Judd, the Velociti employee who installed the Zonar systems onto the First Student buses at Pleasant Valley testified, Jacob Gabbard of Zonar was present on site during the install.  (See Deposition of Jacob Judd, Defendant's Exhibit L at pages 24, 18).  Mr. Gabbard was present for purposes of quality control.  (See Id. at page 45).  As Mr. Judd described, Mr. Gabbard was there to make sure that Mr. Judd was doing his job right.  (Id. at pages 123, 125).  In performing quality control, Mr. Gabbard checked the placement of every hand-held on every bus.  (Id. at page 125).  Despite being on site and reviewing the placement of every hand held, Zonar did not object to the location.  (Id. at page 51).  This is true despite the fact that Zonar employees, in their deposition testimony, acknowledge that the installation was done incorrectly.  (See Deposition of Lonnie Flint, Defendant's Exhibit G, at page 42).

Apparently realizing that the actions of Mr. Gabbard in traveling to the Pleasant Valley School District site during the installation process and performing quality control will render a finding of negligence against Zonar, due to the admitted improper placement of the hand-held, Zonar has decided to deny that Mr. Gabbard

15

was present at the Pleasant Valley School District with Jacob Judd.  In reliance, Zonar asks this Court to interpret the evidence of record in a light most favorable to it, contrary to the Summary Judgment standard, and contrary to the deposition testimony of record.   Simply put, the fact that Mr. Gabbard sent emails in November of 2008 does not disprove Mr. Judd's testimony.

The November 8, 2008 email shows that Mr. Judd and Mr. Gabbard were not at the Pleasant Valley School District at that time.  This is true because Mr. Gabbard was leaving engine tags for Mr. Judd.  The evidence of records suggests that they met earlier, during the Pleasant Valley School District install.  Specifically, Mr. Gabbard admitted that he was on site at the Pleasant Valley School District in 2008.  (See Deposition Transcript of Jake Gabbard, Defendant's Exhibit O, at page 10).   He met "Jacob" on only one occasion.   (See Id. at page 37).    Mr. Gabbard would not state that he didn't meet Mr. Judd at the Pleasant Valley School District, only stating that "he doesn't recall."   (See Id. at page 45).   It makes sense that Mr. Gabbard met Mr. Judd at the Pleasant Valley School District based not only upon the testimony of Mr. Judd but upon the fact that Mr. Gabbard was referring to Mr. Judd by first name, evidencing a familiarity between the parties.

The fact that Mr. Gabbard returned to the Pleasant Valley School District after the installation occurred, does not disprove Mr. Judd's testimony that Mr. Gabbard

was on site during the installation and that he checked every bus.  Mr. Gabbard himself admits that he went on one or two buses at the Pleasant Valley School District site.  (See Deposition of Jacob Gabbard, Defendant's Exhibit O, at page 32).   No explanation has been offered by Zonar, presumably because none exists, as to why Mr. Gabbard did not notice the incorrect installation on the one or two buses that he admits seeing.  This, in and of itself, is enough to create a general issue of material fact on the liability of the Defendant under a negligence theory.

Additionally, Zonar undertook a duty to train the Velociti employees appropriately.  They failed in this obligation as well.  According to Mr. Judd, he was trained by Velociti on both the type of bus and the location of the hand-held to be placed in the bus.  (See Deposition of Jacob Judd, Defendant's Exhibit L at page 28). Zonar and Velociti worked together to determine the safe placement of the cradle for the hand-held.  (See Deposition of Eric Kloss, Defendant's Exhibit A, at page 47). Despite knowing that placement over the stairwell of the bus was unsafe, Zonar failed to appropriately train the Velociti installers so as to prohibit this unsafe placement. This failure led to the unfortunate events involving Shirley Dorshimer on August 30, 2010.

In sum, Zonar chose Velociti as the installer for the First Student project, trained Velociti installers, and performed quality assurance checks on the Velociti work after it was performed.  In doing so, Zonar undertook a duty to act reasonably. Despite undertaking this duty, Zonar failed to ensure appropriate placement of the hand-held portion of the GPS unit.  As a result, Shirley Dorshimer was forced to reach for the hand-held as part of her acquired job duties, in an unsafe position.  She fell from the bus and sustained serious disabling injuries as a result.

As stated above, Zonar requests this Honorable Court to interpret facts in its favor in its attempt to escape liability. This cannot be done under the appropriate Summary Judgment standard.  At a minimum, a jury is entitled to weight the testimony of Jacob Gabbard against Jacob Judd and the other documentary evidence of record that suggests that quality assurance checks were performed.  As this required fact finding is necessary, Summary Judgment is not appropriate.

**IV.**   **CONCLUSION:**

For all of the foregoing reasons, it is respectfully requested that Defendant's

Motion for Summary Judgment be denied.

                    Respectfully submitted,

                    Abrahamsen, Conaboy & Abrahamsen, P.C.


          By:      /s/ James J. Conaboy
                    James J. Conaboy, Esquire
                    Attorney ID Number:   77987

                    1006 Pittston Avenue
                    Scranton, PA 18505
                    (570) 348-0200
                    jconaboy@law-aca.com

## <u>CERTIFICATE OF SERVICE</u>

I, James J. Conaboy, Esquire, hereby certify that I have this 19th day of October, 2015 served a true and correct copy of the foregoing Brief In Opposition to Motion for Summary Judgment of Defendant, Zonar Systems, Inc. upon the following listed below, via ECF:

Thomas J. Kelley, Esquire
Thomas J. Kelley & Associates
50 Glenmaura National Boulevard, Suite 300
Moosic, PA 18507

Kevin J. Ruane, Esquire
Hendrzak & Lloyd
3701 Corporate Parkway, Suite 100
Center Valley, PA 18034


   /s/ James J. Conaboy
James J. Conaboy, Esquire