OFFICES OF THOMAS J. KELLEY & ASSOCIATES
THOMAS J. KELLEY, ESQUIRE
IDENTIFICATION NO. 24777
50 GLENMAURA NATIONAL BOULEVARD
SUITE 300 – GLENMAURA PLAZA
MOOSIC, PA 18507
(570) 343-6570

ATTORNEY FOR DEFENDANT
ZONAR Systems, Inc.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Shirley Dorshimer and Robert Dorshimer, | : | |
| Plaintiffs | : | CIVIL ACTION LAW |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| Zonar Systems, Inc., | : | |
| Defendant | : | (Judge Mannion) |
| v. | : | |
| | : | Electronically Filed |
| Velociti, Inc., | : | |
| Additional Defendant | : | No. 3:13-cv-00553-MEM |

## RESPONSE OF ZONAR SYSTEMS, INC. TO PLAINTIFFS' BRIEF IN OPPOSITION TO ZONAR'S MOTION FOR SUMMARY JUDGMENT

Zonar is constrained to reply to Plaintiff's response to Zonar's Motion for Summary Judgment due to multiple misstatements and mischaracterizations of the record made by Plaintiff in an apparent effort to create material issues of fact. These will be addressed in the order in which they appear in Plaintiffs' Brief.

On Page 3 of her brief, Plaintiff says: "beginning in 2010, Velociti has been a preferred installer for Zonar, an agreement through which Zonar provides a certain volume of business to Velociti on a yearly basis." In reliance for this statement Plaintiff cites to the deposition testimony of Tim Kats of Velociti at page 20-21. A review of that testimony establishes that Mr. Kats never said anything about the volume or frequency of business between the companies and

1

certainly never said that Zonar directs a volume of business to Velociti on a yearly basis. The fact remains that Zonar did not retain Velociti to do the installation work at issue.

On page 4, Plaintiff states that the local manager of the Pleasant Valley First Student location, Karen DeNardo testified that "Zonar chose Velociti as the installer for the Pleasant Valley Project." (Citing DeNardo testimony at page 68). In fact, she never said anything of the sort. The sum of her cited testimony simply relates that she had been informed by someone from Zonar that Velociti was the installation company when she was discussing scheduling dates for the installation work. This is consistent with the fact that all three companies worked together in scheduling. As is abundantly clear elsewhere in the record, First Student, not Zonar, chose Velociti as the installer and directly contracted with it for that purpose.

Next on page 4, Plaintiff says that Eric Kloss of First Student "confirmed that Zonar and Velociti worked together in the installation process at Pleasant Valley. The work that Zonar did with Velociti included work regarding the safe placement of the cradle." (Citing Kloss at pp. 47). The record shows to the contrary that Mr. Kloss never said anything about Zonar and Velociti working together at Pleasant Valley. This "fact" is simply created by Plaintiff. At best, Mr. Kloss said that when the original installation of Zonar Equipment by Velociti in First Student buses began, the First Student Safety Department determined its preferences for safe locations of Vehicle Mounts and may have communicated these preferences to Zonar or Velociti or maybe to Zonar which told Velociti. In either event, Plaintiff cites to no evidence that Zonar ever directed, authorized or condoned placement of a Vehicle Mount by Velociti over the steps of Plaintiff's bus.

In the next example on page 5, Plaintiff says that "Due to the importance of First Student as a client, Zonar agreed to perform quality assurance checks after the Pleasant Valley School

2

District Installation to ensure compliance with the handheld location." (Citing the deposition of Andre Horochiwsky at pp. 64-67). The cited testimony in reality involved Mr. Horochiwski's commentary on a document entitled "First Student Quality Assurance Statement of Work." He explained that this was an agreement between Velociti and First Student referring to a retrofit of earlier installations performed by Velociti. Significantly, he specifically stated that he personally did not know if it applied to the Pleasant Valley installation. Later discovery testimony makes clear that this retrofit only applied to work which had been done in 2007 and involved in part placement by Velociti of fuses which had been omitted during the actual installation work. In that regard, Mr. Kats of Velociti explained the document as follows:

> "Q: What is the purpose of the document, Mr. Kats?
>
> A: On the 2007 installs there were issues with the size of the hole we drilled for the --from the HD-GPS unit harness and not using a grommet. There was also an issue with fuses being installed on those 2007 installs. We agreed with Zonar to go back and just perform an overall quality check on the vehicles to address any of the no-grommet issues for the wiring, and, for the fuses, to install the fuses that weren't included by Zonar in the kits.
>
> Q. So did this first quality – or excuse me – "First Student Quality Assurance Statement of Work." involve Velociti going back and rechecking all the buses that were worked on as part of the 2007 install?
>
> A. Correct.
>
> Q. Did this apply at all to any of the work that was done as part of the 2008 install?
>
> A. No. On those new installations we would have used the grommets, we used the fuse holders."

(See Kats at pp. 57-58).

He further stated:

3

> Q. Referring to Exhibit 2, which is the Draft No. 4. (First Student Quality Statement of Work)
>
> A. Yes, I have it.
>
> Q. And that you've properly fully explained here. This was a backward - looking document in the sense that it referred to installations that had already been performed in 2007; correct?
>
> A. Correct.
>
> Q. And it did not encompass any responsibilities of the parties going forward.
>
> A. Well, I'd say it was understood we were going to follow those guidelines going forward.
>
> Q. Well, there's a section here which refers to QA checks by Zonar personnel of those that had already been installed; correct?
>
> A. Correct.
>
> Q. That reference to responsibility on Zonar's part did not carry over with regard to future installations; right?
>
> A. Correct. Yeah, as far as Zonar providing QA checks, no, this wouldn't - - this document did not encompass 2008 installations."

(See Kats at p. 104)

This testimony, and the terms of the contract entered into by First Student and Velociti in July of 2008, conclusively show that Zonar was *not* obligated or expected to perform quality assurance checks on Velociti's 2008 work, including that done at Pleasant Valley.

Plaintiff next contends on page 5 that Jacob Gabbard of Zonar went to the Pleasant Valley site to do quality control work for Zonar and "according to Mr. Judd's testimony, Mr. Gabbard did perform quality control work *checking the placement of every handheld on every bus.*" Emphasis added. (See Judd at pp. 123-125). This representation is incorrect. Even accepting Mr. Judd's disputed testimony as true, he never mentioned anything about Mr.

4

Gabbard checking handhelds, does not know if Gabbard went onto all of the buses and specifically does not know if Mr. Gabbard was ever inside of the Plaintiff's bus. (See Judd at p. 126). Plaintiff also states that Mr. Judd said that Zonar employee Lonnie Flint was on site during the Pleasant Valley installation. In fact, Judd testified that Mr. Flint was present during roll out training at an *earlier* site, not at Pleasant Valley. (See Judd at pp. 26-27). Thus, there is no testimony that Mr. Gabbard and Mr. Flint were both at Pleasant Valley, that they checked every bus for placement of handhelds or that anyone from Zonar was actually aware of the mounting location of the handheld in Plaintiff's bus.

In summary regarding Plaintiff's counter-statement of facts, and contrary to Plaintiff's factual conclusions, there is no evidence that Zonar chose Velociti as the installer for the Pleasant Valley School District installation work. The undisputed evidence is that First Student chose Velociti and contracted with it as its exclusive installer for all work after July of 2008 including Pleasant Valley. There is no documentary evidence that Zonar was required to perform Quality Assurance checks of Velociti's work. To the contrary, the evidence shows that while Zonar agreed to inspect Velociti's work from the year before the Pleasant Valley installation, that undertaking did not carry over to 2008. Consistent with that, Mr. Judd's testimony that Mr. Gabbard nonetheless appeared at the Pleasant Valley site to conduct "quality assurance work" is conclusively refuted in the record. The documentary evidence shows that Mr. Gabbard was not on site simultaneously with Mr. Judd and therefore all of Judd's testimony to the contrary must be dismissed. Plaintiff's argument to the contrary is purely speculation.

Most significantly, there remains no evidence that Mr. Gabbard or anyone from Zonar saw or was made aware of the improper placement of the handheld on Plaintiff's bus. Even if Mr. Judd's testimony, when considered in its entirety, was to be accepted as true there is no

testimony that any handheld was located over the steps of any of the buses which Mr. Gabbard admits or is alleged to have entered. That is, there is no testimony that Mr. Gabbard ever entered plaintiff's bus nor is there any evidence that the handheld was placed over the steps of every bus at Pleasant Valley. Since Mr. Gabbard himself says he went onto only one or two buses and did not see the handheld positioned over the steps on those and Mr. Judd does not know whether Mr. Gabbard went onto all the buses a jury would be left to speculate as to whether Zonar was on notice of any improper handheld installations.

In argument, Plaintiff posits the ridiculous notion that Zonar failed to provide any installation warnings to First Student or Plaintiff. The fact remains that the installation manual was provided with the product when it was shipped to First Student. Moreover, both Velociti and First Student have acknowledged awareness of the cautionary instructions. The instruction guidelines were even made part of the First Student Quality Assurance Statement of Work Agreement between Velocity and First Student pertaining to installations which pre-dated the Pleasant Valley Installation.

Plaintiff's expert does not suggest that First Student's Installation Guidelines were inadequate nor does he contend that the product itself was dangerous, only that it was rendered dangerous for use due to its installation in an obviously improper location. Since Plaintiff herself had no control over where her employer had the handheld installed, the warnings of necessity were properly directed to her employer and its installer. A warning to Plaintiff that the product might pose a danger if it was installed out of reach over an open set of steps would be meaningless and superfluous as the condition was obvious to any user. The only efficacious warning would be the one that was presented to First Student and Velociti.

Similarly, Plaintiff's argument that Zonar failed to properly train Velociti technicians not to place handhelds over bus steps has no merit as Mr. Judd of Velociti has admitted that he knew that the location he selected in Plaintiff's bus violated Zonar's instructions. The question of whether he was trained separately not to do that is meaningless.

For the reasons stated above and in Defendant's Motion for Summary Judgment, Defendant Zonar Systems, Inc. respectfully requests judgment in its favor.

Respectfully Submitted,

**LAW OFFICES OF THOMAS J. KELLEY**

/S/ Thomas J. Kelley, Esquire
Thomas J. Kelley, Esquire
50 Glenmaura National Boulevard
Third Floor, Glenmaura Professional Plaza
Moosic, PA 18507
(570) 343-6570; (570) 343-5183 (fax)
tkelley@travelers.com
ID No. 24777