**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KEVIN J. RUANE, ESQUIRE** | ATTORNEY FOR DEFENDANT(S), |
| E-mail: Kevin.ruane@zurichna.com | VELOCITY, INC. |
| Attorney I.D. No.: 30584 | |
| **HENDRZAK & LLOYD** | |
| 3701 Corporate Parkway, Suite 100 | |
| Center Valley, Pennsylvania 18034 | |
| (610) 709-8705 | |
| SHIRLEY DORSHIMER and ROBERT DORSHIMER | |
| v. | |
| ZONAR SYSTEMS, INC. | NO.: 3:13-CV-00553 |
| v. | |
| VELOCITI, INC. | TRIAL BY JURY OF 12 DEMANDED |

**PRE-TRIAL MEMORANDUM OF ADDITIONAL DEFENDANT VELOCITI, INC.**

A.   **STATEMENT OF FEDERAL COURT JURISDICTION**

Additional Defendant agrees that this Honorable Court has jurisdiction of the case under the provisions of 28 US Code §1332 in that this is a civil action between citizens of different States.

B.   **STATEMENT OF FACTS AND CONTENTIONS AS TO LIABILITY**

The instant matter arises from an incident on August 30, 2010, wherein Plaintiff-wife, Shirley Dorshimer, a long-time bus driver at Pleasant Valley School District in Brodheadsville, Pennsylvania, and employee of First Student, Inc., during the course and scope of her employment, suffered injuries when she fell out of school bus 42 onto a concrete floor of the mechanical garage of the School District.

Mrs. Dorshimer, was a long-time bus driver at Pleasant Valley School District in Brodheadsville, Pennsylvania. She and her husband, Robert, instituted this suit against Defendant, Zonar Systems, Inc. (Zonar) seeking money damages for personal injuries allegedly sustained on August 30, 2010. Zonar, in turn, joined Velociti, Inc. (Velociti) as a Third Party

Defendant. This joinder did not occur until after the expiration of the applicable Statute of Limitations. Plaintiffs have no direct action against Velociti.

Prior to 2007, the Pleasant Valley School District bus fleet was owned and operated by the School District. Shirley Dorshimer was an employee of the School District and bus 42 was her bus. Circumstances changed in 2007 when the School District entered into an agreement with First Student, Inc. (First Student), a nationwide organization involved in the provision of transportation services for school children. Generally speaking, First Student purchased the bus fleet, including bus 42, and then interviewed and hired the bus operators. Shirley Dorshimer was one of many former School District bus drivers who interviewed for one of these positions and was hired by First Student. Bus 42 remained her bus.

The original defendant, Zonar, designed and manufactured a system called EVIR, which provides the capability for GPS tracking of school buses and electronic completion of federally mandated pre- and post-trip vehicle inspections. The system includes a cradle that holds a hand-held device used by truck and bus drivers to record portions of their pre-and post-trip inspections.

In 2008, First Student purchased EVIR systems from Zonar. First Student contracted directly with Velociti for the installations to be performed in 2008. Velociti's contract proposal dated July 31, 2008, contemplated installations in approximately 764 buses located in 13 separate locations around the country. The Pleasant Valley location in Brodheadsville accounted for 123 of these units.

The hand-held device is kept within a cradle, which serves as a combination holder, battery charger, and data transmitter. The cradle is located along the interior front bulkhead (far right side) of each vehicle in accordance with installation instructions from Zonar and/or First Student. Velociti's records indicate that the EVIR unit was installed in bus 42 on November 17, 2008.

The contract for the installation of these devices existed between First Student, Inc. and Velociti and specifically incorporated the directions of an installation and owner's manual created by First Student, Inc., which was based almost entirely upon Zonar's installation and owner's manual as supplemented by First Student.

Among the applicable specifications were the requirements that the cradle be located upon the front bulkhead of the bus in an area not otherwise occupied by any decals, signs or other equipment such as a First Aid kit. The two sets mandated the following:

1. Placement on the front bulkhead (**First Student**);
2. Placement near a window to permit extension of a transmitter antenna;
3. Placement without obscuring any pre-existing plaque on the front bulkhead (**First Student**);
4. Placement high in the bus to keep it out of the aisle-way and driver's area;
5. Placement without moving the First Aid kit (**First Student**); and
6. Placement in an open area of the front bulkhead large enough to permit removal of the hand-held device from the cradle.

Contrary to the assertions of Plaintiffs and Zonar, the placement of the cradle or vehicle mount, as it is more properly known, did not violate the mandates of either Zonar or First Student. The vehicle mount was placed on the front bulkhead without obscuring any pre-existing plaques and without moving the First Aid kit as mandated by First Student. It was mounted near a window to permit extension of a transmitter antenna, high in the bus to keep it out of the aisleway and driver's area and in an open area of the front bulkhead large enough to permit removal of the hand-held device from the vehicle mount.

Velociti's installation was proper and in accordance with the obligations imposed upon it by First Student pursuant to the contract for the installation at Pleasant Valley and elsewhere. The end result is accurately depicted in the photographs below.



### 1.     *The Accident:*

No one, including Plaintiff, knows how she came to fall from the bus. She was unable to articulate any explanation for the incident at any time after it occurred and even now admits that she has no idea what happened to her.

There are statements in numerous contemporaneous medical records indicating that Plaintiff was unable to state how or why she fell. The document known as the Employer's Report of Occupational Injury or Disease that was prepared with respect to this matter indicates that Plaintiff fainted as she was exiting the bus. This may, in fact, be the initial account of Plaintiff falling out of the bus as opposed to simply falling down after she had left the bus. Plaintiff's own husband has testified that Plaintiff was unable to tell him why or how she fell. Indeed, several of Plaintiffs closest friends and fellow bus drivers testified that Plaintiff was unable to articulate any account of why or how she fell when they first had an opportunity to speak with her.

Moreover, data produced by Zonar for the period from April, 2010 through August 30, 2010, demonstrates that Plaintiff accessed the hand-held device from the vehicle mount and used it successfully eighty-eight (88) times. That data only covers the summer months when school

was not in session; however, Plaintiff used the hand-held device for an additional school year and a half prior to the incident, demonstrating her experience with this device and its location.

Additionally, there is no record that Plaintiff ever, in fact, lost her balance while attempting to remove or replace any of the items located in the front right-hand corner of the bus. There is no evidence that she ever made any complaints to her superiors about her alleged difficulty in accessing any of this equipment.

Indeed, what is clear from the intensive investigation and voluminous discovery in the case is that Plaintiff replaced the hand held device in its cradle at 9:06 am that morning but didn't fall until 9:15 am. There is no credible evidence that this fall was precipitated by anything to do with the Zonar EVIR equipment located within Plaintiff-wife's bus.

It is Velociti's position that they are in no way liable for Plaintiff-wife's subject accident. Initially, Defendant points to the fact that the location chosen was mandated by the specifications in the Velociti's contract with First Student.  There were no objections to this location by anyone from First Student upon completion of the project. There were no objections to this location by anyone from Zonar present (for training purposes) during or after the completion of the project.

Velociti's installation was proper and in accordance with the obligations imposed upon it by First Student pursuant to the contract for the installation at Pleasant Valley and elsewhere.

Most importantly, Plaintiff candidly admits she does not know how she fell out of the bus.  Given the lack of any credible evidence that plaintiff was attempting to access the EVIR equipment just prior to her fall, her extensive familiarity and successful use of this equipment for two years, and the proper placement in accordance with its contractual requirements, Velociti did not breach any duty of care for which it may be found liable.

Finally, First Student has acknowledged that it was fully aware of the installation of the device over the steps of the buses, was at all times in possession and control of Plaintiff's bus,

and the location of the Vehicle Mount over the steps was obvious for over two years prior to Plaintiff's accident.

**C.     STIPULATION OF FACTS**

Velocity respectfully requests a stipulation as to the following:

1. Plaintiff was involved in an incident which occurred on August 30, 2010 on the premises of her employer, First Student, while in the course and scope of her employment.

2. First Student purchased the electronic vehicle inspection reporting (EVIR) equipment from Zonar

3. First Student contracted with Velociti for the installation of the EVIR equipment in its buses, including bus 42.

4. The EVIR equipment was installed in bus 42 on or about November 17, 2008.

5. Bus 42 was regarded as Plaintiff's bus which she operated on a daily basis from the time that this equipment was installed until August 30, 2010.

6. There was no objection raised by any party, including First Student, to the location of the EVIR equipment in bus 42 at any time after its installation.

7. The treatment records produced by the various treating physicians obtained by way of discovery or subpoena response are stipulated to be authentic without the need for testimony on that issue.

8. The records of First Student produced by way of discovery or subpoena response are stipulated to be authentic without the need for testimony on that issue.

9. The records of Plaintiff's Workmen Compensation Carrier produced by way of discovery or subpoena response are stipulated to be authentic without the need for testimony on that issue.

**D.     DESCRIPTION OF DAMAGES**

Following extensive discovery, including the acquisition of numerous records the following is a summary of the injuries which may be reasonably related to the incident of August 30, 2010:

1. Right distal radial fracture open reduction with internal fixation of the intra-articular distal radius fracture, healed by October 20, 2010;

2. Traumatic subarachnoid hemorrhage, possible concussion with indeterminate loss of consciousness. No surgical intervention was warranted; interval resolution of left temporal subarachnoid hemorrhage without any acute pathology by September 28, 2010;

3. Decrease in visual acuity of her right eye Sept. 30, 2010; improved by Oct. 18, 2010;

4. Deep vein thrombosis of her right lower leg which was confirmed and then followed by three ultrasound studies from September 5, 2010 through October 18, 2010. Plaintiff underwent Coumadin therapy for the three-month period of time until this final visit; and

5. Per neuro-psych testing seven months post-accident, her cognitive functions generally were intact and those deficits which were recognized were more likely due to her negative expectations as a result of her underlying depression and anxiety.

Velociti believes that Plaintiffs injuries generally resolved by October, 2010, just two months after the accident. However, her final medical release to drive did not come until September, 2012. Velociti disputes any claims for medical expenses or claims for lost wages postdating this time period as they are simply unrelated to the incident in question. This position is consistent with the offer of light duty employment by First Student to Plaintiff by letter dated August 7, 2012. It is also consistent with Plaintiff's Compromise & Release Agreement with her employer dated November 9, 2012, in which she agreed that no indemnification payments or medical expenses would be paid by her employer after that date.

E.     **WITNESS LIST**

Defendant may or will call the following witnesses at time of trial. Further, Defendant respectfully reserves the right to call any witnesses identified in the Pre-Trial Memorandum of Plaintiff and Defendant Zonar.

1. Shirley Dorshimer - c/o Attorney James Conaboy
2. Robert Dorshimer - c/o Attorney James Conaboy
3. Tim Katz - c/o Attorney Kevin Ruane - employee of Velcociti
4. Jacob Judd, c/o Attorney Kevin Ruane - employee of Velociti
5. Andre Horochiwsky - c/o Attorney Michael J. Domanish - employee of Zonar
6. Karen DeNardo, 167 Cindy Lane, Saylorsburg, PA 18353 - employee of First Student
7. Paul Kuehner, 737 Kuehner Drive, Kunkletown, PA - employee of First Student
8. Jacob Gabbard - c/o Attorney Michael J. Domanish - employee of Zonar
9. Lonnie Flint, c/o Attorney Michael J. Domanish - employee of Zonar
10. Eric Kloss, 600 Vine Street, Suite 1400, Cincinnati, Ohio 45202 - employee of First Student
11. Carol Haldman, 123 Hilltop Drive, Kresgeville, PA 18333 - employee of First Student

12. Dian Kelchner, 2754 Pleasant Valley Lane, Broadheadsville, PA 18322 - employee of First Student
13. Deborah Rogers, 274 Old Allentown Rd, Wind Gap, PA 18091 - Plaintiff's sister
14. Margaret Tichy, 112 Timber Lane, Saylorsburg, PA 18353 - employee of First Student
15. Katholine Eldrige, 311 Hawk Road, Saylorsubrg, PA 18353 - employee of First Student
16. Dustin Koons, 17831 29th Avenue NE, Lake Forest Park, WA 98155 - former employee of Zonar

**Defendants' Experts:**

17.   Kirk Lawrence Thibault, Ph.D. (Biomechanical Engineer)
      Thibault Scientific
      303 West Lancaster Avenue, #333
      Wayne, PA 19087

18.   Dr. Michael Banas (Board Certified Orthopedic Surgeon)
      Sports Medicine Bone and Joint
      220 South River Street
      Plains, PA 18705

19.   Thomas Swirsky-Sacchetti, Ph.D. (Neuropsychologist)
      Diversified Psychological Resources, P.C.
      230 South Broad Street, Suite 1005
      Philadelphia, PA 19102

20.   Dr. Timony J. Michals  (Forensic Psychiatrist)
      125 South 9th Street
      Suite 1003
      Philadelphia, PA 19107

21.   Jasen Walker, Ed.D., CRC, CCM     (Vocationalist)
      CEC Associates, Incorporated
      1220 Valley Forge Road, Unit 9
      Valley Forge, PA 19482

F.   **SUMMARY OF TESTIMONY OF EACH EXPERT WITNESS**

   Please see Defendants' expert reports attached as hereto as Exhibits "A" through "E".

G.   **SPECIAL COMMENTS ABOUT  PLEADINGS AND DISCOVERY**

   None at this time.

H.   **SUMMARY OF LEGAL ISSUES INVOLVED**

   Duty
   Breach of Duty
   Causation
   The extent of recoverable damages

I. **STIPULATIONS DESIRED**

    1.    Plaintiff does not know what caused her to fall.

    2.    Plaintiff replaced the EVIR hand-held unit at 9:06 a.m.

    3.    Plaintiff fell at approximately 9:15 a.m.

J. **ESTIMATED NUMBER OF TRIAL DAYS**

It is anticipated that it will take 4-5 days to select a jury and to try this case.

K. **ANY OTHER MATTER PERTINENT TO THE CASE TO BE TRIED**

None at this time.

L. **EXHIBIT LIST**

Please see Exhibit "F."

M. **SPECIAL VERDICT QUESTIONS**

None at this time.

N. **COMPLIANCE OF LOCAL RULE 16.2**

Counsel for Additional Defendant, Kevin J. Ruane, Esquire, hereby states that he has obtained concurrence from all counsel and prior approval of this Honorable Court to have the claims representative of Zurich North America, to wit, Thomas Flanagan, participate in the Pre-Trial Conference via telephone.

O. **USE OF DEPOSITIONS AT TRIAL**

Local Rule 30.10 requires that counsel meet to review deposition and videotape transcripts. Presently, counsel expects that all designated witnesses, save for Defendants' medical experts, who have yet to be deposed on video, will testify live at trial. However, in the event that some of the fact witnesses prove unavailable for trial, counsel will meet and confer regarding the transcripts and videotapes and the same will be edited as needed to eliminate

irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact.

**P.**     **LOCAL RULE 48.2 - TRIAL WITHOUT A JURY**
        This section is not applicable to this case.

Respectfully submitted,

**HENDRZAK & LLOYD**

*/s/ Kevin J. Ruane*
KEVIN J. RUANE, ESQUIRE
Identification No. 30584
Attorney for Defendant Velociti, Inc.

Date: August 1, 2016